Filed 11/4/24  In re D.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.R., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E083482 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1300374) |
| v. | OPINION |
| R.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elizabeth Tucker, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Conditionally reversed and remanded with directions.

Caitlin E. Howard, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Minh C. Tran, County Counsel, and Teresa K.B. Beecham and Samara Silverman, Deputy County Counsel, for Plaintiff and Respondent.

R.G. is the father (Father) and J.R. is the mother[1] (Mother) of D.R. (male born June 2021; Minor). Father appeals from the juvenile court's termination of his parental rights under Welfare and Institutions Code[2] section 366.26. Father challenges the termination order on the ground that the Riverside County Department of Public Social Services (the Department) social workers and the juvenile court failed to comply with the duty of initial inquiry under the California Indian Child Welfare Act[3] (ICWA and/or Cal-ICWA).

While this case was pending on appeal, two changes in the law occurred. First, the Legislature enacted Assembly Bill No. 81 (2023-2024 Reg. Sess.) (Stats. 2024, ch. 656, § 3), which amended several provisions of the Welfare and Institutions Code, including section 224.2, subdivision (b), which governs the duty of initial inquiry. Second, the California Supreme Court decided *In re Dezi C.* (2024) 16 Cal.5th 1112 (*Dezi C.*), establishing the applicable standard of prejudice when a child protective agency fails to discharge its duty of initial inquiry. Applying these new authorities to this case, we hold

---

[1] Mother is not a party to this appeal.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

that the Department failed to discharge its duty of initial inquiry and that the error was prejudicial under *Dezi C.* Therefore, we conditionally reverse and remand to allow the Department to comply with their duty of inquiry under ICWA and related California law.

## FACTUAL AND PROCEDURAL HISTORY[4]

On December 25, 2022, the Department received a referral regarding domestic violence between S.A. and Mother while she was holding Minor.[5] After this incident, the Department had difficulty locating S.A., Mother, and Minor.

Although the Department was unable to locate the family, on February 8, 2023, the Department filed a section 300, subdivision (b) petition on behalf of Minor. The petition listed S.A. as Minor's father and included details regarding domestic violence between Mother and S.A., Mother's history of abusing controlled substances, and the child welfare histories of Mother and S.A. The Department was unable to complete the Indian Child Inquiry Attachment (ICWA-010) since Mother and S.A. could not be located.

At the initial hearing on March 3, 2023, neither Mother nor S.A. were present. Appointed counsel for Mother and S.A. stated that neither had contact with their respective clients. At the hearing, the court made the following findings: "The Court does find that the minor, [D.R.], is detained from parents, [Mother] and [S.A.].

---

[4] Because the only issue on appeal is whether the Department and the juvenile court properly complied with their duties under ICWA, this court will focus on ICWA-related facts and procedural history.

[5] Mother originally identified S.A. as the father of Minor. Therefore, the Department initially referred to S.A. as the father in its initial investigation and petition. A DNA test, however, determined R.G. to be Minor's biological father.

Continuance in the home is contrary to the welfare of the children. Temporary care and placement is vested with the director of [the Department]. Reasonable efforts were made to prevent or eliminate the need for removal. At this time there is no reason to believe that ICWA applies." The court then went on to adopt the findings in the out-of-custody report filed on February 8, 2023, as amended on March 3, 2023.

Moreover, at the initial hearing, the juvenile court signed a protective custody warrant for removal of Minor under section 340. The next day, the court detained Minor.

On March 28, 2023, the Department filed a jurisdiction/disposition report. In this report, the Department named both S.A. and Father as fathers or alleged fathers.

During one of the meetings with the social worker, Mother denied having Native American ancestry. As for Mother's family assessment, Mother asked that "her information be acquired from previous reports." The social worker gathered information from a previous jurisdiction/disposition report from December 9, 2019. In that report, the Department included that Mother's father was deported to Mexico when Mother was 10 years old. Mother, however, reported being close to her father and they remain connected via telephone. Mother reported being raised by her mother who has remained "supportive by offering housing." Mother has two sisters who live in Florida, one sister who lives in Mexico, one brother in prison, one brother who lives in Wisconsin, and two sisters who live "locally in the valley."

On March 23, 2023, the social worker spoke with Father; he requested a paternity test. Father stated that he and Mother had a falling out, and he did not know whether

4

Minor was his child. If Minor were his biological child, Father expressed interest in having custody of Minor.

At a hearing on April 3, 2023, Mother's counsel stated that she submitted "the JV-140 and the ICWA-020 on her behalf for the Court to file." In the ICWA-020 form, Mother indicated "[n]one of the above" regarding Native American status. The court continued the hearing pending Father's DNA test.

On May 15, 2023, the paternity results revealed that Father's probability of paternity for Minor was 99.99 percent. That same day, the social worker informed Father about the results. Father initially agreed to meet with the social worker later that day. Father, however, stopped responding to the social worker's messages.

On May 16, 2023, the Department filed an amended petition listing Father as Minor's sole father and striking S.A. as the father. The petition modified the allegations to reflect that the domestic violence was perpetrated by "*mother's boyfriend.*" As to Father, the amended petition added allegations that Father had a history of substance abuse; a criminal history where his behavior placed Minor "*at risk of being exposed to future illegal activity, violent behaviors, and suffering serious emotional and/or physical harm*"; and was "*not an active member of his child's household, and he is unable and/or unwilling to provide the child with adequate food, clothing, shelter, medical treatment, support and/or protection.*"

On May 18, 2023, the Department filed its addendum report to the jurisdiction/disposition report. In the report, the social worker stated that Father "did not

5

make himself available" for an interview. The social worker, however, gathered information from a jurisdiction/disposition report dated September 13, 2016, from a prior dependency. Father reported he was born in Indio to Javier and Carmen Garcia; his parents remained married throughout Father's childhood. Father also has two sisters and one brother. In this prior dependency, Father filed a paternal notification of Indian Status on April 19, 2016, "stating he has no Indian ancestry." In October 2016, the juvenile court "determined that the Indian Child Welfare Act (ICWA) did not apply during the Contested Jurisdictional Hearing." The court granted joint custody of the child to Father and Mother and terminated the dependency.

At the continued jurisdiction/disposition hearing on May 23, 2023, neither Mother nor Father attended. The juvenile court found Father to be Minor's biological father and dismissed S.A. from the case. Mother's counsel stated that a maternal aunt, J.R., should be considered for placement. Counsel stated she would obtain additional information and provide them to the Department's counsel. The juvenile court set the matter for a contested jurisdiction/disposition hearing on July 17, 2023.

On July 12, 2023, the Department filed an addendum report. In the report, the Department recommended that the juvenile court find that the Department "conducted a sufficient inquiry regarding whether the child may have Indian ancestry," and found that ICWA "*does not apply to the child*," and "that proper and adequate further inquiry and due diligence as required have been conducted and there is no reason to know whether the child is an Indian child."

6

At the contested jurisdiction/disposition hearing on July 17, 2023, neither Mother nor Father attended. The juvenile court adopted the findings and recommendations of the Department's addendum report filed on July 12, 2023. The court found that the Department conducted a sufficient inquiry regarding whether Minor may have Indian ancestry and found that ICWA does not apply, sustained the allegations, and found that Minor came within section 300, subdivision (b). The court removed the custody of Minor from both parents and denied Father reunification services. The court set a combined hearing for selection and implementation under section 366.26 and postpermanency planning review under section 366.3 for November 13, 2023.

Father attended the hearing on November 13, 2023. At the hearing, the court asked Father about his Native American heritage.

"THE COURT: I'm going to ask you some questions about your heritage. To your information, do you know if anyone within your family has any Native American ancestry?

"THE FATHER: No, ma'am."

The court then asked Father's counsel to "fill out the forms for [Father] and submit them." The court then proceeded to question Father again.

"THE COURT: . . . [¶] No one in your family that you're aware of was ever a member of a Native American tribe?

"THE FATHER: No, ma'am.

"THE COURT: Or lived on a reservation?

7

"THE FATHER: No, ma'am.

"THE COURT: Or got any benefits because they were a member of a tribe?

"THE FATHER: No."

The court then told Father that if he receives "information at some point during the course of this case that you do have Native American ancestry," to provide that information to the Department.

On March 13, 2023, Father attended the combined postpermanency planning review and selection and implemental hearing. At the hearing, the juvenile court adopted the recommendations and findings of reports filed by the Department. The court again found that ICWA did not apply, a sufficient inquiry had been made, and there was no new information to indicate that ICWA may now apply. The juvenile court terminated the parental rights of Mother and Father as to Minor and designated the caregivers as Minor's prospective adoptive parents.

On the same day, Father filed his timely notice of appeal.

**DISCUSSION**

Father's sole contention on appeal is that "[t]he juvenile court erred in finding that the ICWA did not apply as the Department failed to comply with the duty of inquiry."

In its brief, the Department "agrees that the record does not reflect an ICWA inquiry of extended family members." However, the Department contends it "was not statutorily required to conduct an ICWA inquiry of extended family members, as [Minor] was never in temporary custody under section 306."

8

Under California law, the juvenile court and county child welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subdivision (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.) In this case, only the first of these phases is at issue.

Under section 224.2, the department has an initial duty to inquire into whether a child is an Indian child. (*In re J.S.* (2021) 62 Cal.App.5th 678, 686.) On September 27, 2024, Assembly Bill No. 81 went into effect. Relevant to this case, Assembly Bill No. 81 amended portions of section 224.2. Section 224.2, subdivision (b)(1), states that "[t]he duty to inquire begins for a county when first contacted regarding a child, including, but not limited to, asking a party reporting child abuse or neglect whether the party has any information that the child may be an Indian child, and upon a county department's first contact with the child or the child's family, including extended family members as defined in paragraph (1) of subdivision (c) of Section 224.1. At the first contact with the child and each family member, including extended family members, the county welfare department or county probation department has a duty to inquire whether that child is or may be an Indian child."

Moreover, Assembly Bill No. 81 amended section 224.2, subdivision (b)(2), clarifying that there is a duty of inquiry regardless of how a child is taken into custody.

Prior to the enactment of Assembly Bill No. 81, some panels of this court have held that the duty to inquire of extended family members under section 224.2, subdivision (b), is not triggered when the child is taken into custody pursuant to a detention warrant under section 340. (*In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*), review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672 (*Ja.O.*), review granted July 26, 2023, S280572 [adopting the reasoning of *Robert F.*]; and *In re Andres R.* (2023) 94 Cal.App.5th 828, review granted Nov. 15, 2023, S282054 [majority opinion defending the holdings in *Robert F.* and *Ja.O.*].)

However, in *In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D.*), review granted Sept. 27, 2023, S281447, another panel of this court held that neither the plain language of section 224.2, subdivision (b), the structure of the statutory scheme, nor the relevant legislative history and purpose support the holding in *Robert F.*, *supra*, 90 Cal.App.5th 492. (But see *Delila D.*, at pp. 977-981 (dis. opn. of Miller, J.).) The majority in *Delila D.* held that the fundamental premise to the decision in *Robert F.* was flawed because "[s]ection 306 authorizes a department to maintain a child in temporary custody both when the child has been taken from home by a social worker or police officer under exigent circumstances without a warrant (§ 306, subd. (a)(1) & (2)) *and* when the child has been taken from home by means of a protective custody warrant issued under section 340 (§ 306, subd. (a)(1))." (*Delila D.*, at p. 971.) The court stated, "it simply doesn't make sense to apply different initial inquiries depending on how

the child was initially removed from home, as that procedural happenstance has nothing to do with a child's ancestry." (*Id.* at p. 975)

The Legislature has now clarified the language of section 224.2, subdivision (b)(2),[6] as follows:

"If a child is placed into the temporary custody of a county probation department pursuant to Section 307, or received and maintained in temporary custody of a county welfare department pursuant to paragraph (1) of subdivision (a) of Section 306, or taken into or maintained in the temporary custody of a county welfare department pursuant to paragraph (2) of subdivision (a) of Section 306, *or if they were initially taken into protective custody pursuant to a warrant described in Section 340*, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (Italics added.)

---

[6] Assembly Bill No. 81 "[c]larifies the timing, duration, and scope of a county department's, and a court's, duty to inquire whether a child is or may be an Indian child." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 81 (2023-2024 Reg. Sess.) as amended Aug. 19, 2024, p. 5.) "'[W]here a statute provides that it clarifies . . . existing law, "[i]t is obvious that such a provision is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment"' [citation]." (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 428.)

Therefore, the Department's initial duty of inquiry was triggered under section 224.2, subdivision (b)(2).  Hence, we must next consider whether the Department's failure to comply with its initial duty of inquiry was prejudicial.

Until recently, there was a split of authority among the Courts of Appeal regarding the proper standard to apply in assessing the prejudicial effect of a child protective agency's failure to comply with its duty of initial inquiry.  (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1125, 1134-1135.)  The California Supreme Court resolved this split of authority by holding that a "conditional reversal is required" when an inquiry is inadequate "so the [child protective agency] can cure the error and thereby safeguard the rights of tribes, parents, and the child."  (*Id.* at p. 1141.)  The court stated that "[w]hen a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial.  [Citations.]  '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.'"  (*Id.* at p. 1136.)  As a result, "error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [California Rules of Court] rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3."  (*Ibid.*)

Based on the above, until the Department completes its duty of initial inquiry under ICWA, it is premature to conclude that ICWA does not apply.  (*Dezi C.*, *supra*, 16 Cal. 5th at pp. 1136, 1141.)

**DISPOSITION**

The order terminating Father's parental rights is conditionally reversed. On remand, the juvenile court shall order the Department to comply with the inquiry and notice requirements of sections 224.2 and 224.3. Thereafter, if the juvenile court determines that ICWA does not apply, the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


MILLER
J.

MENETREZ
J.

13